UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PIONEER FREIGHT FUTURES<br>COMPANY LTD. | § | CIVIL ACTION<br>NO. |
| | § | |
| | § | |
| Plaintiff, | § | JUDGE: |
| | § | |
| v. | § | MAGISTRATE: |
| | § | |
| FARENCO SHIPPING PTE LTD, | § | |
| OCEAN GREAT INDUSTRIAL LTD., | § | |
| TEAMZONE, LTD., and LIU SONG | § | |
| | § | |
| Defendants, | § | |
| | § | |

**12-2792**

**SECT. F MAG. 1**

## VERIFIED COMPLAINT

**TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

Pioneer Freight Futures Company Ltd. (**"Pioneer"** or **"Plaintiff"**), submits this verified complaint against foreign corporations and alter-egos Farenco Shipping Pte Ltd. (**"Farenco Singapore"**), Ocean Great Industrial Ltd. (**"Ocean Great"**) Liu Song (individually), and Teamzone Ltd. (**"Teamzone"**) (collectively, **"Defendants"**), and seeks the issuance of an order pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (**"Rule B"**), directing seizure and attachment Defendants' vessel, the M/V Ocean Shanghai (**"Vessel"**), which is presently within the jurisdiction of this honorable court:

## INTRODUCTION

1.     Farenco BVI is in liquidation proceedings in the British Virgin Islands (**"BVI Liquidation"**) because it incurred approximately $65 million in debts to plaintiff Pioneer in connection with breached forward freight agreements (**"FFAs"**).

Fee $350.
Process
X Dktd
CtRmDep
Doc. No.

1

2.      Before being placed in Liquidation, Defendant Liu Song the owner of Farenco BVI and non-party Approach Group Ltd. ("**Approach Group**") caused Farenco BVI to fraudulently and/or preferentially transfer significant assets, including but not limited to approximately $71.3 million, and "good business" to and for the benefit of Liu Song, and his companies Ocean Great, Teamzone, and Farenco Singapore.

3.      Much of the $71.3 million was transferred from Farenco BVI to Approach Group and then to Other Liu Song owner entities. Approach Group was wholly owned by Liu Song but has since been placed in liquidation by the BVI Court due to the fraudulent and preferential transfers at issue.

4.      Plaintiff's claims herein arise from Farenco BVI's breach of FFA Agreements.

5.      Of particular importance to this action and for Plaintiff's prima facie alter ego allegations, Plaintiff can demonstrate that some of the $71.3 million funneled out of Farenco BVI through non-party Approach Group was **DIRECTLY UTILIZED** by Approach Group to purchase the M/V Ocean Shanghai for the benefit of Liu Song's other companies, Ocean Great and Farenco Singapore.

6.      The United States Bankruptcy Court for the Southern District of New York (the "**NY Bankruptcy Court**") has recognized the BVI Liquidation of Farenco BVI as a foreign main proceeding pursuant to chapter 15 of the United States Bankruptcy Code of Title 11 of the United States Code ("**Chapter 15**"), 11 U.S.C. 1501 *et seq., see In re Farenco Shipping Co. Ltd.,* 11-14138 (REG) (Bankr. S.DN.Y.) (February 24, 2012) (the "**Chapter 15 Case**").

7.      The facts and circumstances surrounding the fraudulent and preferential transfers from Farenco BVI have been extensively briefed to the NY Bankruptcy Court in connection with a significant dispute concerning discovery in the Chapter 15 case, to which docket this Court is

respectfully referred.  The relevant motions are currently *sub judice*.

8.     The M/V Ocean Shanghai was attached by Farenco BVI pursuant to a Rule B order of maritime attachment.  That attachment was recently vacated by Judge Zainey of this Court on November 15, 2012 on the ground that there was not admiralty jurisdiction.  Farenco BVI made its claim pursuant to a cause of action in maritime indemnity.  Plaintiff understands that an appeal of the November 15, 2012 ruling has already been filed.

9.     Attached hereto as Exhibit 1 is a media report describing the ongoing NY Bankruptcy Court proceedings, including an excellent summary of the fraudulent and/or preferential transfers.  As noted in Exhibit 1, the factual bases for Plaintiff's alter ego claims herein have been "meticulously documented" in the Chapter 15 case in the form of exhibits to declarations such as party admissions, emails and financial records that run in excess of 1000 pages.  Those exhibits have been omitted from this complaint so as to not burden this Court.  Nevertheless, Plaintiff Pioneer incorporates all of Farenco BVI's submissions in the Chapter 15 case by reference herein.

10.     By this action, Plaintiff Pioneer asserts its FFA claims (**"FFA Claims"**) against Defendants on the ground that Defendants are the alter-egos of primary obligor Farenco BVI.  Because the FFA Claims arise from breaches of maritime contracts, Pioneer's claims fall within this Court's admiralty jurisdiction, and Pioneer seeks attachment of Defendant's Vessel pursuant to Rule B.

## JURISDICTION, VENUE AND PARTIES

11.     This is a case of admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, this case is also founded upon the provisions of

Chapter 15, and specifically, 11 U.S.C. 1509.

12.    Venue in this action is properly found in this Honorable Court pursuant to 28 U.S.C. § 1391(b).

13.    This Court has *quasi in rem* jurisdiction over Defendants because the vessel is within this judicial district.

14.    At all times material herein, Farenco BVI is and was a foreign corporation or business entity organized under the laws of the British Virgin Islands ("**BVI**") and is presently in liquidation under the laws of the BVIs pursuant to Insolvency Act of 2003 of the British Virgin Islands (the "**2003 Act**").

15.    At all times material herein, plaintiff Pioneer is and was a foreign business corporation or business entity organized under the laws of the British Virgin Islands:

  a.  Plaintiff Pioneer entered into an FFA with Farenco BVI that was breached by Farenco BVI.   In connection with this breach, Pioneer claims the sum of $53,533,664.89 from Farenco BVI.

16.    Defendant Liu Song is an individual believed to be a citizen of China.

  a.  Liu Song was the beneficial owner and sole director of Farenco BVI (the Foreign Debtor).

  b.  Liu Song is also the sole director of Farenco Singapore and the beneficial owner of "Farenco Singapore" - the entity that manages/charters/operates the Vessel Ocean Shanghai, and to which Farenco BVI's "good business" was fraudulently and/or preferentially transferred.

    c.  Liu Song was also the sole director and sole shareholder of Approach Group the intermediary entity through which Farenco BVI's $71.3 million in cash was funneled to entities and persons, including but not limited to Defendants.

    d.  Liu Song is the sole director and beneficial owner of defendant Ocean Great, the registered owner of the vessel Ocean Shanghai.

    e.  Liu Song is the sole shareholder of defendant Teamzone Ltd., a British Virgin Islands entity that is the sole shareholder of defendant Ocean Great, the registered owner of the vessel Ocean Shanghai.

17.    Non-Party Approach Group is a British Virgin Islands entity currently in liquidation pursuant to the 2003 Act.

    a.  John Ayres, the liquidator of plaintiff Farenco BVI, is the duly appointed liquidator of Approach Group.

    b.  Approach Group was placed into liquidation upon the application of Mr. Carter, the former Farenco BVI liquidator, due to the fraudulent and/or preferential transfers from Farenco BVI to Approach Group pursuant to the 2003 Act. The BVI Court did so on the basis that Farenco BVI was a creditor of Approach Group in the minimum amount of $31.679 million fraudulently transferred (approximately $18.7 million in fraudulent and/or preferential transfers had yet to be discovered at the time of the Approach Group liquidation application). It is believed that Farenco BVI is Approach Group's sole creditor.

    c.  Non-party Approach Group is an intermediary entity through which the funds of Farenco BVI were fraudulently or preferentially transferred to Ocean Great, Farenco Singapore, Liu Song, and single-purpose ship-owning entities.

    d. Attorneys for Farenco Singapore have claimed that the transfers were made pursuant to an "Investment Management Agreement" (suspiciously produced only after a year of litigation) and were not fraudulent. Even assuming that this explanation is valid (which is expressly denied), the funds were nevertheless transferred to "Connected Parties" during the 2003 Act's "vulnerability period" to the detriment of similarly situated creditors such as Pioneer. Moreover, the former management of Approach Group has, for more than a year, declined to appear in the Approach Group liquidation proceedings and assert this explanation.

    e. Approach Group directly financed the purchase of the vessel M/V Ocean Shanghai (f/k/a "Fortune Ocean") with Farenco BVI funds. To wit, on December 9, 2009, Approach Group made a $7.42 million payment to a Panamanian entity called White Bellflower Shipping S.A. ("**White Bellflower**"), the Ocean Shanghai's former owner, with the payment reference ""OBI - Purchasing Fund for M/V Fortune Ocean..." After this payment, the Fortune Ocean was renamed Ocean Shanghai, and its registered owner was changed from White Bellflower to defendant Ocean Great.

18.    Upon information and belief, at all times material herein, Defendant Ocean Great is and was a company incorporated under the laws of Hong Kong.

    a. Ocean Great is the registered owner of the vessel Ocean Shanghai. Ocean Great is beneficially owned and controlled by Liu Song.

    b. The Vessel Ocean Shanghai was purchased for Ocean Great by Approach Group using fraudulently and/or preferentially transferred funds of Farenco BVI.

c. Upon information and belief, Ocean Great charters the Vessel Ocean Shanghai to Farenco Singapore for inadequate or no consideration.

19.    Upon information and belief, at all times material herein, Defendant Farenco Singapore is and was a company incorporated under the laws of Singapore.

a. Farenco Singapore was established by Liu Song in order to wrongfully create a "good company/bad company" structure with the intent and purpose of maintaining Farenco BVI's good business while unlawfully avoiding Farenco BVI's debts.

b. Farenco Singapore is the successor in interest to and alter ego of Farenco BVI. Farenco Singapore is the manager/charterer/operator of the Vessel Ocean Shanghai.

c. Farenco Singapore potentially maintains an ownership interest in bunker fuel aboard the vessel Ocean Shanghai.

d. Farenco Singapore is beneficially owned and controlled by Liu Song.

e. Farenco Singapore was the recipient of Farenco BVI's "good" business, knowhow and charters in violation of the BVI 2003 Act.

f. Farenco Singapore was capitalized by Approach Group in the amount of $10.1 million in funds that were fraudulently and/or preferentially transferred out of the Farenco BVI estate.

g. Farenco Singapore was the direct recipient of an apparently consideration-less (and hence fraudulent) transfer of $4.655 million from Farenco BVI during Farenco BVI's vulnerability period.

h.  Upon information and belief, Farenco Singapore receives charter hire from third parties in connection with the vessel Ocean Shanghai.  Upon information and belief, Farenco Singapore charters the vessel Ocean Shanghai from Ocean Great for inadequate or no consideration.

## Rule 44.1 Statement of Intent to Rely on Foreign Law

Plaintiff intends to rely on foreign law, specifically the law of the British Virgin Islands and the laws of England.

## BACKGROUND FACTS AND ALLEGATIONS

### Farenco BVI's Business and Liquidation

20.    On November 16, 2004, Farenco BVI was incorporated in the British Virgin Islands. The sole director and shareholder of Farenco BVI is Liu Song.  From its inception to its ultimate liquidation, Farenco BVI appeared to have been engaged in the business of chartering vessels and trading Forward Freight Agreements ("**FFAs**"), which are futures based upon the cost of freight associated with maritime trade routes.

21.    On or around December 2007, Liu Song submitted an application on behalf of Farenco BVI to Merrill Lynch's Hedge Funds and Managed Future Funds seeking a credit facility of $5,000,000.00.  The application lists liquid assets and net worth each exceeding $5,000,000.00 and combined annual income from all sources exceeding $1,000,000.00.  It describes its risk tolerance as "moderate."

22.    A September 2008 Farenco sales presentation described Farenco as a rapidly growing "debt-free company" with a "strong cash position" and revenue projected to reach $700 million by 2013..

23.     In 2008, the market for transportation of cargo suffered a dramatic collapse as a result of the global economic downturn.  At that time, the Baltic Dry Index, which measures average global freight prices for the transportation of bulk goods, collapsed, and the price of carrying bulk goods and the demand for carriage of bulk goods dropped significantly.  As a result, Farenco BVI suffered losing FFA trading positions.  Despite due demand Farenco BVI failed to make the required FFA payments to Pioneer.

24.     As a result of Farenco BVI's failure to pay, on April 28, 2011, non-party Agrenco made an application to the BVI Court for an order under the 2003 Act placing Farenco BVI in liquidation and for the appointment of a Liquidator.

25.     On May 30, 2011, the BVI Court issued an order placing Farenco BVI into liquidation and appointing Nicholas James Francis Carter liquidator (the "Liquidation Order").

26.     Entry of the Liquidation Order resulted in the commencement of a foreign proceeding as defined in 11 U.S.C. § 101(24).

27.     From the outset it was reported to Pioneer that the Liquidator of Farenco BVI considered the apparent transfer of business from Liu Song-controlled Farenco BVI to Liu Song-controlled Farenco Singapore suspicious and worthy of investigation, particularly given the lack of records voluntarily supplied in the liquidation despite requests for such information by the Liquidator.

28.     It was partially based on these suspicions that the Liquidator obtained sanction from the BVI Court to file the Farenco BVI Chapter 15 in the New York Bankruptcy Court, as he was aware that at the direction of Liu Song, Farenco BVI and Farenco Singapore had registered to do business in New York as foreign corporations, conducted banking and wire transfers through New York banks, and had utilized New York legal counsel.

29.     On July 27, 2011, the BVI Court issued an order providing that "[t]here be sanction to bring proceedings in New York in the name of and on behalf of the Company [Farenco BVI] for the purpose of obtaining discovery against and/or in relation to the affairs of the Company, Farenco Shipping Pte. Ltd. [Singapore] and Farenco Transportation Co. Ltd. [Hong Kong] *and their associates*."

30.     Through the United States discovery, in particular a production of legal files and correspondence from the law firm of Blank Rome LLP (the "**Blank Rome Production**") the Liquidator learned that Liu Song and/or Farenco Singapore planned and caused the intentional "migration" of Farenco BVI's business to Farenco Singapore.

31.     Also through the New York discovery provided by New York financial institutions ("**Intermediary Bank Discovery**"), it became apparent that $50.37 million was transferred from Farenco BVI to Approach Group without any apparent consideration ("**Approach Group Transfers**").  Pioneer has been informed that the Liquidator's investigation of the Approach Transfers is ongoing.

32.     The funds channeled through Approach Group were used to facilitate the purchases of at least two - and likely four - vessels that are (i) now managed/operated/chartered by Farenco Singapore and (ii) are beneficially owned by Farenco Group and/or single--purpose affiliate entities controlled and/or owned by Liu Song - including the vessel at issue, the M/V Ocean Shanghai.

33.     As a result of the Farenco Singapore migration and the Approach Group Transfers, Farenco BVI was transformed from a "debt free" company with a "strong cash position" in 2008, to a company in 2011, that, in Liu Song's own words, was a "shell" with no "books or records" and approximately $70.3 million in debt.

34.   Pioneer has been informed by the Liquidator that from the outset of the Farenco BVI liquidation, Farenco Singapore and Liu Song have repeatedly attempted to block the Liquidator's investigation efforts.

35.   These blocking efforts range from wrongfully withdrawing funds from Farenco BVI's bank accounts after the commencement of the Farenco BVI liquidation to denying the existence of books and records in connection with Farenco BVI's significant FFA and chartering business.

**Approach Group and Its Liquidation**

36.   On December 8, 2004, Approach Group was incorporated in the British Virgin Islands. The sole director and a shareholder of Approach Group is Liu Song.

37.   On April 28, 2009, BVI law's two-year "vulnerability" period commenced for Farenco BVI.

38.   Approach Group applied for voluntary liquidation on June 7, 2011, a week after Farenco BVI was placed in liquidation by the BVI Court.

39.   In connection with this voluntary liquidation application, Approach Group, and in particular its Director Liu Song, represented that it had " 'no creditors,' and further that it 'could meet its debts as they fell due.'"

40.   Between April 28, 2009 and May 30, 2011, Farenco BVI made various bank transfers from its HSBC accounts to Approach Group totaling $31.679 million. At a minimum, these transfers appeared to constitute "undervalue" transactions under BVI law, which may be clawed back.  An additional $18.7 million was transferred from Farenco BVI's China Merchants Bank account to Approach Group during the same period.

41. On 16 November 2011, the BVI Court ordered that Approach be restored as a company, in order that Farenco BVI could pursue its claims against Approach. Under BVI law, Approach was not restored back to liquidation; it was restored into normal corporate existence.

42. On February 20, 2012, the BVI Court considered that Farenco BVI's claw back claim against Approach Group was proved on the evidence. On February 20, 2012, the BVI Court Appointed the Farenco BVI Liquidator as Liquidator of Approach Group. In a transcribed opinion, the BVI Court held that Farenco BVI's clawback claim in the amount of $31.679 million had been proved on the evidence as follows: "[Farenco BVI's claim] *is not a contingent claim. It is an existing one which is based on a series of facts **which have been proved** to the Court and which constitute the cause of action necessary to satisfy that section"*.

43. On June 15, 2012, nearly a *year* after Liu Song reported that there were "no books and records" of Farenco BVI, only *after* substantial U.S. and BVI litigation, *after* significant on-the-record as well as "without-prejudice" communications between the parties, and only *after* being confronted with the detailed results of the third-party discovery (including the Approach transfers), Farenco Singapore produced a document purporting to be a "Management Agreement" between Farenco BVI and Approach Group.

44. Under the so-called Management Agreement, Farenco Singapore contends that Farenco BVI was actually conducting business on behalf of Approach as an "undisclosed principal." Even assuming that the Management Agreement is not a forgery or sham contract and is otherwise valid, there are two implications of the Management Agreement:

   a. Approach Group consistently made perfect FFA bets while Farenco BVI's bets either lost or were uncollectible; and

     b.   Approach Group - an indisputable "connected and/or related" entity under BVI law - apparently received approximately $50.379 million in preferential payments during the two-year "vulnerability" period, which payments ultimately inured to the direct benefit of Farenco Singapore and Liu Song.

45.    The Management Agreement does not explain or validate the transfers as being for value and not fraudulent.

     a.   There is no obvious segregation of money and trades pertaining to Farenco BVI's own FFA's from those pertaining to Farenco BVI's trades on behalf of Approach. In other words, there is currently nothing which independently and contemporaneously shows that a particular FFA trade was at the time struck by Farenco BVI on behalf of Approach, rather than by Farenco BVI on its own behalf.

     b.   There is also a claim that some of the wrongfully transferred money was pursuant to a valid assignment - i.e. certain FFA trades originally struck by Farenco on its own behalf, were then assigned to Approach on 14 November 2008, in return for a payment of $10.4m. The reason for these assignments is not stated or apparent, but these assigned trades subsequently came 'in the money' for substantially more than $10.4m. Further, the source of the $10.4m used by Approach to pay Farenco BVI has been traced back to a Farenco BVI account at Merrill Lynch New York.

46.    Moreover, the legitimacy of the alleged Investment Management arrangement is substantially undermined by the fact that Approach Group has never contested the findings of the BVI Court, even though it had ample opportunity to do so.

47.     In sum, the explanations lack credibility and have not been accepted by the Liquidator.  Even if the explanation was valid, the transfers were still made to a connected creditor, Approach Group, within the 2003 Act vulnerability period to the detriment of similarly situated, non-connected creditors such as Pioneer.  The 2003 Act permits the money, and fruits thereof to be clawed back on exactly the same basis for preferential transfers as it does fraudulent transfers.

## Approach Group's Purchase of the "Four Ocean Vessels", Including the Vessel Ocean Shanghai

48.     According    to    Farenco    Singapore's    website,    Farenco    Singapore manages/charters/owns four vessels named with the prefix "Ocean": the M/V Ocean Tianjin (**"Ocean Tianjin"**); the M/V Ocean Shanghai (**"Ocean Shanghai"**); the M/V Ocean Dalian (**"Ocean Dalian"**); and the M/V Ocean Qingdao (**"Ocean Qingdao"**) (collectively, the **"Ocean Vessels"**).

49.     The Ocean Shanghai is the Vessel that Plaintiff seeks to attach in this action.

50.     The Ocean Shanghai was previously named the M/V Fortune Ocean and was owned by a Panamanian entity called White Bellflower Shipping S.A. (**"White Bellflower"**).

51.     On or about December 9, 2009, Approach Group made a $7.42 million payment to White Bellflower with the reference "OBI - Purchasing Fund for M/V Fortune Ocean...").

52.     After this payment, the Fortune Ocean was renamed Ocean Shanghai, and its registered owner was changed from White Bellflower to Defendant Ocean Great.

53.     Ocean Great was incorporated in Hong Kong on November 19, 2009.  Liu Song is its sole director, and BVI entity Teamzone is Ocean Great's sole shareholder.  Liu Song is the

sole shareowner of Teamzone.  Approach Group made a transfer of $10 million to Teamzone on or about August 14, 2009.

54.     In the same process, Farenco Singapore, also beneficially owned and controlled by Liu Song, became manager/operator/charterer of the Ocean Shanghai and began receiving significant, regular charter hire in connection with that vessel.  Furthermore, Farenco Singapore is the guarantor of a $40 million loan facility between China Merchants Bank as lender, and Ocean Shanghai owner Ocean Great as borrower.

55.     Aside from two initial hire payments, there is no evidence that Farenco Singapore pays Ocean Shanghai for use of the vessel.

56.     The Liquidator's investigation has revealed similar patterns with respect to the Ocean Tianjin, Ocean Dalian and Ocean Qingdao, which are omitted here solely for the sake of brevity.  Recently, Defendants cause d to be sold the vessel Ocean Tianjin, the sister vessel of the Ocean Shanghai for an amount believed to be approximately $22 million.  Upon information and belief the approximately $22 million from the sale of the sister vessel Ocean Tianjin was taken by Defendant Liu Song precisely to avoid Cobelfret's claim.

**The "Migration" From Farenco BVI to Farenco Singapore**

57.     Farenco Singapore was incorporated in Singapore on or about August 28, 2008, and is beneficially owned by Liu Song.  Liu Song is the sole director of Farenco Singapore.

58.     The creation of Farenco Singapore coincides with (a) financial downfall of Farenco BVI, (b) the month preceding the first FFA payment due date to Farenco BVI creditor Agrenco and (c) the stated intention to migrate Farenco BVI's "physical business" to a Singaporean entity.

59.     Moreover, Farenco Singapore was capitalized by Approach Group in the minimum amount of $10.1 million using wrongfully transferred Farenco BVI funds.  As such, Farenco Singapore's very existence is the fruit of a wrongful transfer that may be clawed back under BVI law.

60.     In essence, Farenco Singapore took over the chartering business of Farenco BVI via the planned "migration."

61.     Farenco Singapore appropriated Farenco BVI's employees, contact lists, know how, then-good name, customer base (i.e. clients for subcharters), supplier base (i.e. vessel charterers and owners) and various contracts.

62.     At least two active vessel charters - the M/V Yuan Zhi Hai and the M/V Great Prestige - were assigned from Farenco BVI to Farenco Singapore for a significant undervalue.

**Liu Song's Control Over All the Entities and Wrongful Conduct**

63.     Under BVI law, a director must not misappropriate corporate assets, exploit or divert corporate opportunities for the benefit of himself or others, or deal with the company on his own account and for his own benefit.  In the event a director does these things the company has claims to recover those assets and opportunities, and any fruits thereof, not just against the director, but against knowing recipients and accomplices.

64.     On July 8, 2011, *__after the commencement of the Farenco BVI Liquidation__* $17,120.11 was stolen from a Farenco BVI account at China Merchants Bank.  Liu Song had sole signatory authority with respect to that account.  It is believed Liu Song took these funds after the Liquidator had been appointed over Farenco BVI to deprive the Liquidator of funds necessary to engage in discovery concerning the various wrongdoings so Liu Song could prevent

the Liquidator from investigating and unraveling the fraud and recovering and returning money to Farenco BVI's creditors.

65.     Based upon the bank records, the following considerationless (and apparently fraudulent) transfers were also made from Farenco BVI and Approach Group to Liu Song:

     a.  December 18, 2009 - payment of 200,000 HK$ from Approach Group to Liu Song's personal bank account.

     b.  April 15, 2010 - payment of $200,000 from Farenco BVI to Approach Group, along with payment of $200,000 on the same date from Approach Group to Liu Song's personal bank account.

     c.  May 18, 2010 - payment of $1.45 million from Approach Group to Liu Song's personal bank account.

     d.  July 12, 2010 - payment of $1.887 million from Farenco BVI to Approach Group, and then a payment of $1.8 million the following day from Approach Group to a personal, United States-based account at Merrill Lynch Pierce Fanner & Smith in the name of Liu Song.

     e.  January 14, 2011 - payment of $3 million from Approach Group to a BOCI Securities Ltd. account with Liu Song named as beneficiary.

     f.  June 29, 2011 – payment of $608,250 from Approach Group to Liu Song (incidentally the day before approach was placed in voluntary liquidation)

## COUNT I: PIONEER'S FFA CLAIMS

66.     Plaintiff Pioneer entered into a series of FFAs with Farenco BVI.  These FFAs are set forth in Pioneer's proof of claim, and tables of debts, attached hereto as Exhibit 2.

67.    An FFA is an agreement to discount or increase the cost of freight aboard a vessel at a future date, pursuant to vessel descriptions and trade routes.  Numerous courts, including the Eastern District of Louisiana, have held FFAs to be maritime claims and/or have issued Rule B attachment orders on the basis of maritime claims.[1]

68.    On or about October 28, 2009 Farenco BVI breached its FFA with Agrenco and Pioneer.

69.    As a result of the breach, Pioneer has claimed the sum of $53,233,664.89 from Farenco BVI.

70.    Defendants Liu Song, Ocean Great, Teamzone and Farenco Singapore are alter-egos of Farenco BVI and are liable for Farenco BVI's debts to Pioneer.

71.    Federal maritime law governs the issue of piercing the corporate veil in admiralty actions such as this.

72.    Under federal maritime law, courts will pierce the corporate veil upon a showing of *either* domination *or* fraud.  Here, Pioneer can demonstrate both.

73.    Farenco BVI, Farenco Singapore, Teamzone and Ocean Great are all directly or beneficially owned by Liu Song.  Liu Song maintains all of the ownership interests in these entities as, well as the single-purpose holding companies that exist solely to "hold" the shares of Farenco Singapore and Ocean Great so as to obfuscate their true ownership.

---

1 In *Eitzen Bulk A/S v. Capex Indus., Ltd.*, Civ. No. 10-395, 2010 U.S. Dist. LEXIS 136362 (E.D. La. Dec. 13, 2010), Judge Africk addressed the persuasive authority concerning FFAs being maritime contracts and opined, "[f]orward freight agreements are commitments to perform shipping services in the future." *Id.* at *4-5. He then compared the terms and conditions of the FFA contracts in one of those cases to the "similar" terms of the contract before him and held that "[b]ased on the maritime transaction contemplated in the parties' FFA, the Court follows other courts in finding that the FFA [sic] are sufficiently part of the business of maritime commerce to confer admiralty jurisdiction." *Transfield ER Futures Ltd. v. Deiulemar Shipping S.P.A.*, 2012 WL 123286 (E.D.La) (FFAs are maritime contracts and holding "clearly, these Forward Freight Agreements can fairly be said to be maritime contracts. Indeed, this Court is not alone is so finding").

74. Liu Song completely dominates and controls Farenco Singapore, Teamzone and Ocean Great, and prior to its liquidation, completely dominated and controlled Farenco BVI, such that all of these entities are in fact carrying on the personal shipping business of Liu Song and vice-versa.

75. Through intermediary entity Approach Group, Liu Song, Ocean Great, Teamzone and Farenco Singapore wrongfully removed approximately $50.379 million from the Farenco BVI estate. The fruits of these transfers were, *inter alia,* the $10.1 million capitalization of Farenco Singapore by Approach Group, the purchase of the vessel Ocean Shanghai (placed in Ocean Great's name), as well as the purchase of the three other "Ocean Vessels" (placed in the name of other Liu Song owned/controlled single purpose entities).

76. When deciding whether to pierce the corporate veil, Courts examine a number of factors. These factors include (1) common or overlapping stock ownership between parent and subsidiary; (2) common or overlapping directors and officers; (3) use of same corporate office; (4) inadequate capitalization of subsidiary; (5) financing of subsidiary by parent; (6) parent exists solely as holding company of subsidiaries; (7) parent's use of subsidiaries' property and assets as its own; (8) informal intercorporate loan transactions; (9) incorporation of subsidiary caused by parent; (10) parent and subsidiary's filing of consolidated income tax returns; (11) decision-making for subsidiary by parent and principals; (12) subsidiary's directors do not act independently in interest of subsidiary but in interest of parent; (13) contracts between parent and subsidiary that are more favorable to parent; (14) non-observance of formal legal requirements; (15) existence of fraud, wrongdoing or injustice to third parties; 16) overlap in personnel; (17) common address and telephone numbers; (18) the degree of discretion shown by the allegedly

dominated corporation; and (19) payment or guarantee of the corporation's debts by the dominating entity.

77.    Almost all of these factors are present in this case, and supported by voluminous documentary evidence.

a.    Farenco Singapore, Farenco BVI, Teamzone, and Ocean Great share directly overlapping stock ownership (all are <u>solely</u> owned either directly or demonstrably indirectly, by Liu Song).

b.    The entities have wholly overlapping directors and employees. Liu Song is the sole director of all entities and Farenco Singapore appropriated the employees of Farenco BVI.

c.    All entities use the same corporate offices in China and Singapore, and maintain identical contact information.

d.    Liu Song, Farenco Singapore, Teamzone and Ocean Great caused Ocean Great to become grossly undercapitalized as a result of the series of transfers totaling $50.379 million and assignment of Farenco BVI's ongoing charters (i.e. its revenue stream) to Farenco Singapore.

e.    Farenco Singapore, Teamzone and single-purpose entity Ocean Great's sole asset were capitalized by Approach Group, which is also solely owned and controlled by Liu Song, using wrongfully transferred Farenco BVI funds.

f.    Farenco Singapore, Farenco BVI, Teamzone, Ocean Great and Liu Song commingle the assets of the group and contracts are overtly favorable to Liu Song and Farenco Singapore.  This is evidenced not only by the asset transfers but also by the suspicious assignments of charter agreements and FFAs for dubious

consideration.  Moreover, it appears that although it is the nominal owner of the vessel Ocean Shanghai, Ocean Great has not been receiving charter hire (beyond the first two payments) from Farenco Singapore.  At the same time, Liu Song owned and controlled Farenco Singapore collects charter hire from third parties for use of the Ocean Shanghai.  Finally, the contact lists, know-how, business relationships and other significant intangible assets of Farenco BVI as a going concern transacting hundreds of millions of dollars of business was wrongfully usurped by Farenco Singapore.

g.  The existence of a significant fraud has been discussed in detail herein - namely, the draining of Farenco BVI's corporate assets by Liu Song via Approach Group to other Liu Song controlled entities.  This fraud transformed Farenco BVI from a healthy company to an assetless "shell."

h.  Farenco Singapore further guaranteed the mortgage and/or the revolving credit facility of the vessel Ocean Shanghai, on behalf of Ocean Great, the registered owner for little or no apparent consideration.

78.    Admiralty Courts have routinely upheld Rule B attachment orders based on single allegations of one entity paying the debt of another.  Plaintiff respectfully submits that ample evidence and allegations described support the issuance of a Rule B order of attachment against Ocean Great, Teamzone, Farenco Singapore and Liu Song here.

79.    Ocean Great, Teamzone, Farenco Singapore, and Liu Song are not present in the district for the purposes of Rule B.  They are neither subject to general jurisdiction nor do they maintain agents for service of process.

80.     Wherefore, Pioneer seeks the issuance of a Rule B attachment against Liu Song, Teamzone, Farenco Singapore and Ocean Great's property, the vessel Ocean Shanghai, as well as any property of Defendants aboard, on the basis of Pioneer's FFA claims against the alter egos of Farenco BVI.

**CUMULATIVE PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Pioneer prays as follows:

1.     That process in due form of law, including but not limited to process under Rule B, according to the rules and practices of this Court in the form of a writ of maritime attachment be issued against defendants Farenco Singapore, Teamzone, Liu Song and Ocean Great, in the amount of $53,233,664.89 arising from Pioneer's FFA claims, and if Defendants cannot be found, then that its goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to them, is claimed by them, is being held for them or on their behalf, or which is being transferred for their benefit, within the district, namely the M/V OCEAN SHANGHAI, may be attached in an amount sufficient to answer Pioneer's claims;

2.     That any property attached in this proceeding be sold under the direction of this Court and that the proceeds of the sale be brought into this Court to satisfy all amounts owed to Pioneer;

3.     That Farenco Singapore, Teamzone, Liu Song and Ocean Great Industrial and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

4.     That this Court retain jurisdiction over this matter through the entry of any

22

judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and,

     5.     That this Court find that the value of the Ocean Shanghai is $20 million or higher; and,

     6.     That this Court grant Pioneer such other and further relief which it may deem just and proper.

Respectfully submitted,

_____

Patrick H. Patrick, T.A. (14297)
Laurence R. DeBuys IV (14202)
Stephen E. Mattesky (09046)
PATRICK MILLER LLC
400 Poydras Street, Suite 1680
New Orleans, Louisiana 70130
Telephone:    (504) 527-5400
Facsimile:    (504) 527-5456
Email:  ppatrick@patrickmillerlaw.com
            ldebuys@cox.net
            smattesky@patrickmillerlaw.com


Of counsel

_____

James H. Power
Warren E. Gluck
Holland & Knight LLP
31 West 52nd Street
New York, NY 10019
Telephone: (212) 513-3200
Facsimile: (212) 513-9010
E-mail: james.power@hklaw.com
E-mail: warren.gluck@hklaw.com
*pro hac vice pending*

**Counsel for Pioneer Freight Futures Company Ltd.**